J-A16005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| REHAB FINANCIAL GROUP, LP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN GRIMES | : | |
| | : | |
| Appellant | : | No. 2601 EDA 2024 |

Appeal from the Order Entered September 6, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2024-001188

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED NOVEMBER 20, 2025**

Brian Grimes appeals from the order, entered in the Court of Common Pleas of Delaware County, denying his petition to open/strike the amended confession of judgment. After review, we affirm.

Between 2017 and 2020, Rehab Financial Group, LP (Rehab) made a series of loans to 14 limited liability companies (LLCs) that were owned or controlled by the same two principals: Grimes and his former business partner, Travis Robert-Ritter. Grimes and Robert-Ritter each hold a fifty-percent membership interest in the separate LLCs. These loans were memorialized in 17 distinct Notes that were signed by both Grimes and Robert-Ritter.

Grimes also signed 17 Guarantees that authorized confession of judgment against him, in connection with the 17 loans, should the LLCs default on the loans. Each Guaranty contained the following provision:

> The Undersigned [Grimes], jointly and severally, do hereby empower, the Prothonotary or clerk of any attorney of any court of record within the Commonwealth of Pennsylvania or elsewhere to appear for the Undersigned [] and CONFESS JUDGMENT against the Undersigned [] in your favor at any time following the occurrence of a default hereunder: (a) for such sums as are due and/or may become due on the obligations . . . with fifteen [] percent thereof added for collection fees; without prior opportunity to be heard, with release of all errors and without stay of execution.

Amended Confession of Judgment, 4/29/24 (Exhibit B—Guaranty Agreement).

> The Guarantees also stated:

> You [Rehab] shall have the right . . . at any time in your sole discretion, without notice to or consent from Undersigned [Grimes] . . . and without affecting impairing or discharging, in whole or in part Liabilities of Undersigned thereunder, to modify, change or supplement, in any respect, whatever any indebtedness or evidence thereof, or any agreement or transaction between you and Borrower or between you and any other party liable for the Liabilities, or any portion or provision of any thereof; . . . to compromise, release, substitute, exercise, enforce or fail to refuse to exercise or enforce any claims, rights or remedies of any kind which you may have at any time against Borrower or any other party liable for the Liabilities, or any thereof, or with respect to any security of any kind held by you at any time under any agreement or otherwise.

Amended Confession of Judgment, 4/29/24 (Exhibit B—Guaranty Agreement).

Each Guaranty further provided that it is "absolute, unconditional, irrevocable and continuing and will remain in full force and effect until all of the Liabilities have been indefeasibly paid in full." ***See id.***

Each of the 17 Notes also contained a confession of judgment provision. In addition, Grimes signed a "Disclosure for Confession of Judgment" with each of the Guarantees, which are single page documents identifying the lender and borrowers for the associate[d] loan, the amount of the loan, and providing that "the undersigned . . . expressly agrees and consents to [Rehab]'s entering judgment against him by confession pursuant to the terms [of the associated Guaranty]." **See** Rehab's Answer to Grimes' Petition to Open/Strike Confession of Judgment, 6/12/24 (Exhibit 2—Disclosure for Confession of Judgment) (capitalization omitted).

All 17 loans were in default as of July 2021 due to nonpayment. As a result, on March 1, 2022, Rehab entered into a Loan and Security Agreement (LSA) with OHL 1 LLC (OHL), an entity owned or controlled by Robert-Ritter, but not Grimes. In the LSA, Rehab expressly reserved its rights against Grimes and provided that Grimes' 17 personal Guarantees "shall survive." **Id.** In particular, the Grimes Guarantees could be enforced under certain conditions, including:

> SECTION 2.10. <u>Loan Release and Agreement</u>. This Loan Agreement and all other Loan Documents are executed with the understanding between the Lender, Guarantor, and Borrower (the "Parties") that they supersede and replace all other loan agreements and documents between Lender, Guarantor, and any related persons and Companies.
>
> * * *
>
> III. **Only Brian Grimes' personal guarantees with Lender for properties in Exhibit A shall survive. Those guarantees are deemed unenforceable and null and void unless: A.**

**Borrower defaults under this Agreement;** B. Mr. Grimes brings or continues any lawsuit or arbitration against Guarantor Travis Robert-Ritter or any related company or person; or C. Mr. Grimes brings any lawsuit or arbitration against Lender or any related company or [principal] of Lender. If any condition in A, B, or C is triggered, Lender may file suit against Mr. Grimes to collect those guarantees.

*See id.* (Exhibit C—LSA) (emphasis added).

In May of 2022, Robert-Ritter sold the 22 properties securing the 17 Notes. Rehab received a total of $100,000.00 from that sale.[1] Ultimately, the loans have been in default since July of 2021 and have not been paid.

Rehab confessed judgment against Grimes on February 7, 2024, in the amount of $5,664,462.41, accounting for interest, fees, and partial payments made on the loan balance. On April 29, 2024, by agreement of Grimes and Rehab, Rehab filed an amended complaint for confession of judgment. On May 24, 2024, Grimes filed a petition to open/strike the amended confession of judgment and, on June 12, 2024, Rehab filed an answer. On August 20, 2024, the trial court conducted a hearing and, on September 6, 2024, the trial court denied Grimes' petition to open/strike the amended confession of judgment. Grimes filed a motion for reconsideration, which the trial court denied.

Grimes filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Grimes now raises the following claims for our review:

---

[1] Rehab filed suit against Robert-Ritter for fraud and breach of the LSA. On September 21, 2023, Robert-Ritter and OHL accepted liability, jointly and severally, for $5,564,403.46.

1. Did the trial court err in ruling that it had subject matter jurisdiction despite Rehab's failure to join all necessary parties?

2. Did the trial court err in failing to find that the amended complaint in confessed judgment is fatally flawed because the cognovit clauses were not "conspicuous" and [] Grimes' signatures did not bear a direct relation to the warrants of attorney?

3. Did the trial court err when it failed to consider or review the March Agreement and, in fact, ignored it, and thus declined to appreciate the amended "Default" or "Conditions Precedent[]" to Rehab's judgment in confession?

Brief for Appellant, at 6 (reordered for ease of disposition, unnecessary capitalization omitted).

In his first claim, Grimes argues that the trial court erred by failing to dismiss Rehab's action because Rehab failed to join indispensable parties and, thus, the trial court lacked subject matter jurisdiction. *See id.* at 43-50. Grimes contends that he did not waive his subject matter jurisdiction claim because he raised it in his petition and briefed the issue. *See id.* at 46-50. Grimes asserts that the trial lacked jurisdiction where Rehab failed to join Ritter as a party to the confessed judgment on the above-described Notes. *See id.* at 43-45. Grimes posits that his "rights are so intertwined with [Ritter's] . . . that [Grimes] is being prejudiced by not having these parties present in the instant case[.]" *Id.* at 46.

Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. *Sabella v. Appalachian Dev. Corp.*, 103 A.3d 83, 90 (Pa. Super. 2014). "Failure to join an indispensable party goes absolutely to the court's jurisdiction and the

- 5 -

issue should be raised *sua sponte*."[2] **Barren v. Dubas**, 441 A.2d 1315, 1316 (Pa. Super. 1982) (internal quotation marks and citations omitted). This requirement is reflected in the Pennsylvania Rules of Civil Procedure:

> **Rule 1032. Waiver of Defenses. Exceptions. Suggestion of Lack of Subject Matter Jurisdiction or Failure to Join Indispensable Party.**
>
> (a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, **except** a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, **the defense of failure to join an indispensable party**, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.
>
> * * *
>
> (b) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action.

Pa.R.Civ.P. 1032 (a), (b) (emphasis added). Whether a court has subject matter jurisdiction presents a question of law, making our standard of review

---

[2] We note that the trial court erred in determining that this claim was waived. **See** Trial Court Opinion, 11/6/24, at 7. Indeed, our case law amply demonstrates that this claim is non-waivable and may be raised *sua sponte* on appeal. **See Bolus v. United Penn Bank**, 520 A.2d 433, 435 (Pa. Super. 1987) (subject matter jurisdiction issue where indispensable party was not joined is nonwaivable claim that may be raised *sua sponte*).

*de novo* and the scope of review plenary. ***Mazur v. Trinity Area sch. Dist.***, 961 A.2d 96, 101 (Pa. 2008).

"A party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." ***Orman v. Mortgage I.T.***, 118 A.3d 403, 406 (Pa. Super. 2015) (citations and quotations omitted). "If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." ***Grimme Combustion, Inc. v. Mergentime Corp.***, 595 A.2d 77, 81 (Pa. Super. 1991). Trial courts must weigh the following considerations in determining whether a party is indispensable to a particular litigation:

> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?

***Martin v. Rite Aid of Pa., Inc.***, 80 A.3d 813, 814 (Pa. Super. 2013). "In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party." ***Pa. State Educ. Ass'n v. Commonwealth***, 50 A.3d 1263, 1277 (Pa. 2012) (citation omitted).

Instantly, we are cognizant that the focus for the indispensable party issue is whether the rights of the **absent party** are related to the claim. ***See***

*Martin*, *supra*; *Orman*, *supra*. The claim, brought by Rehab, is that Grimes, as the sole personal guarantor of the above-described loans, is responsible for payment on those loans upon default. Indeed, the 17 personal guarantees, confessions of judgment, and warranties of attorney reflect that Grimes alone signed each of them. Grimes made the following promise in each guarantee:

> "[T]o induce REHAB . . . to grant loans or advances . . . to [Borrower Entity] . . . the Undersigned, intending to be legally bound, guarantee(s) absolutely and become(s) surety for the full and prompt payment to you of any and all obligations, indebtedness or liabilities of any kind of Borrower to you[.]"

Amended Confession of Judgment, 4/29/24 (Exhibit B—Guaranty Agreement). Further, Grimes' promise was not conditioned upon Rehab first or simultaneously proceeding against "the Borrower" or any other potentially liable party. *See id.* (Guaranty "may be enforced by you [Rehab] without first making demand upon or proceeding against Borrower or others liable on any such obligation."). Additionally, Grimes' liability was not contingent on the Properties that secured the loans remaining within Grimes' control:

> You [Rehab] may exercise as to any security held . . . and apply the proceeds of any sale or disposition . . . in the satisfaction of any of such obligations . . . without obligation to marshal any such property in my [Grimes] favor (or in the payment of any one or more of such obligations) and without releasing me from my liability to pay any deficiency remaining unpaid after such application.

*Id.*

Based upon the foregoing, it is clear to this Court that Grimes and Rehab are the only indispensable parties to the confessed judgment. Grimes'

personal guarantee to Rehab that he be liable for the loan amounts, if and when defaults occurred, were between only Grimes and Rehab. ***See Grimme Combustion, Inc.***, ***supra***. Grimes' personal guarantees are independent of the properties securing Grimes' debt. ***See*** Amended Confession of Judgment, 4/29/24 (Exhibit B—Guaranty Agreement) ("This Guaranty is an independent obligation that is not secured by a mortgage or other security instrument."). Therefore, we conclude that there are no other indispensable parties to this action, and Grimes' claim lacks merit. ***See Germantown Sav. Bank v. Talkacki***, 657 A.2d 1285, 1287 (Pa. Super. 1995) (confession of judgment proper against two of four individual members of LLC who were guarantors of loan made to partnership, without joinder of partnership).

Grimes' next two claims challenge the trial court's order denying his petition to open/strike the confessed judgment. Our review is informed by the following principles. A confessed judgment will only be stricken "if a fatal defect or irregularity appears on the face of the record." ***Ferrick v. Bianchini***, 69 A.3d 642, 647 (Pa. Super. 2013) (citation omitted). A judgment by confession will be opened if the petitioner acts promptly, alleges a meritorious defense, and presents sufficient evidence in support of the defense to require the submission of the issues to a jury. ***See id.*** "In adjudicating the petition to strike and/or open the confessed judgment, the trial court is charged with determining whether the petitioner presented sufficient evidence of a meritorious defense to require submission of that issue

to a jury." ***Id.*** (citation omitted). A meritorious defense is a defense upon which relief could be afforded if proven at trial. ***See id.***

In examining the denial of a petition to strike or open a confessed judgment, our standard of review is for an abuse of discretion or error of law. ***PNC Bank v. Bluestream Tech., Inc.***, 14 A.3d 831, 835 (Pa. Super. 2010).

> In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given, i.e., the complaint and the documents which contain confession of judgment clauses. Matters dehors the record filed by the party in whose favor the warrant is given will not be considered. If the record is self-sustaining, the judgment will not be stricken. However, if the truth of the factual averments contained in such record are disputed, then the remedy is by a proceeding to open the judgment and not to strike. An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.
>
> * * *
>
> When determining a petition to open a judgment, matters dehors the record filed by the party in whose favor the warrant is given, i.e., testimony, depositions, admissions, and other evidence, may be considered by the court. An order of the court opening a judgment does not impair the lien of the judgment or any execution issued on it.

***Hazer v. Zabala***, 26 A.3d 1166, 1169 (Pa. Super. 2011).

This Court has consistently held that there is a need for strict adherence to rules governing confessed judgments. ***See Ferrick***, 69 A.3d at 647.

> As a matter of public policy, Pennsylvania applies a similar strict standard to establish the validity of a cognovit clause. This is so because "a warrant of attorney to confess judgment confers such plenary power on the donee in respect of the adjudication of his own claims that certain specific formalities are to be observed in order to effectuate the granting of such a power." ***Frantz Tractor Co. v. Wyoming Valley Nursery***, [] 120 A.2d 303, 305 ([Pa.]

1956). Accordingly, "[a] Pennsylvania warrant of attorney must be signed. And it will be construed strictly against the party to be benefitted by it, rather than against the party having drafted it." ***Egyptian Sands Real Estate, Inc. v. Polony***, [] 294 A.2d 799, 803 ([Pa. Super.] 1972) (citations omitted). "A warrant of attorney to confess judgment must be self-sustaining and to be self-sustaining the warrant must be in writing and signed by the person to be bound by it. The requisite signature must bear a direct relation to the warrant of attorney and may not be implied." ***L.B. Foster Co. v. Tri-W Const. Co.***, [] 186 A.2d 18, 20 ([Pa.] 1962).

***Graystone Bank v. Grove Estates LP***, 58 A.3d 1277, 1282 (Pa. Super. 2012).

Instantly, in his second claim, Grimes argues that the cognovit clauses were not "conspicuous" and his signatures did not bear a "direct relation" to the warrants of attorney. ***See*** Brief for Appellant, at 37-41. Grimes asserts that Pennsylvania law does not favor confession of judgment provisions, and that confession of judgment clauses may only be enforced if they "strict[ly] adhere[] to the provisions of the warrant of attorney." ***Id.*** at 38. Grimes relies upon ***Perry Square Realty, Inc. v. Trame, Inc.***, 693 A.2d 1320, 1321-22 (Pa. Super. 1997), for the proposition that a warrant of attorney is not enforceable against a guarantor where the guarantor had only signed the final page of a lease but had not affixed his signature to, nor initialed, any other page. ***See*** Brief for Appellant, at 39. Specifically, Grimes states that

the cognovit clause is not in capital letters, there are no headings, the fonts are identical in the Notes and identical in the Guarantees . . ., and there are numerous other bolded words and paragraphs in the Note. Moreover, the cognovit clause bears no direct relation to the signature of [] Grimes. He never specifically signed or initialed the warrant provisions. His signatures are not in direct relation to the cognovit clauses. There is nothing to suggest that

- 11 -

the confession of judgment provision is any different, or any more consequential, than any other provision. Instead, the cognovit clause is buried in the documents. The cognovit clauses are therefore defective on their faces . . . [and] Grimes did not knowingly, voluntarily, or intelligently accede to the waivers.

Brief for Appellant, at 40-41 (some capitalization and quotations omitted). We disagree.

The trial court addressed the validity of the confession of judgment as follows:

It is undisputed amongst the parties that [Grimes] personally signed the seventeen (17) notes and seventeen (17) guarantees, and that his signature appears at the end of each of the thirty-four (34) documents. This [c]ourt reviewed the Exhibits and determined the notes and guarantees contain express language authorizing [Rehab] to confess judgment against [Grimes] in the event of default. The default occurred in July of 2021. [Grimes'] counsel conceded at oral argument that the words "Confession of Judgment" appeared in the documents in question that were signed by [Grimes], but took umbr[age] with the conspicuous nature of those words within the documents.

[Notably, Grimes] has not alleged that he lacked the capacity to understand the documents that he signed. In argument, [Grimes] concedes that his signature appears in the notes and guarantees in the pages **after** the relevant paragraph regarding confession of judgment. This [c]ourt [] determined that under ***Frantz Tractor***[, ***supra***] and its progeny, [] neither the typeset of the warrant of attorney nor [its] location within the notes and guarantees precludes enforcement of the judgment. ***See also Germantown Sav. Bank*** [], 657 A.2d [at] 1289-90 (enforcing warrant of attorney in same typeset as surrounding text, on third of nine pages in signed document).

In this case . . ., [Grimes'] signature closely follows and "directly relates" to the warrants of attorney in all seventeen of the notes and seventeen guarantees.

- 12 -

Trial Court Opinion, 11/6/24, at 9-10 (emphasis in original, some citations omitted).

Upon review of the record and the prevailing case law, we agree with and adopt the trial court's sound reasoning regarding the cognovit clauses. Indeed, in **Germantown Sav. Bank**, our Supreme Court ruled that a confession clause was enforceable where it was "printed in the same size type as the rest of the text." **See id.** at 1289-90; **see also Plum Tree, Inc. v. Seligson**, 307 A.2d 298, 299 (Pa. Super. 1973) (confession clause valid where it was "set in the same type" as other text). Accordingly, Grimes' challenges to the validity of the cognovit clauses and warrants of attorney are meritless and he is entitled to no relief.

In his third claim, Grimes argues that the trial court erred by failing to consider the LSA and, thus, erred in denying his petition to open/strike the confessed judgment. **See** Brief for Appellant, at 26-37. Grimes asserts that the trial court failed to consider that the LSA had three conditions that modified the original loan agreement unless and until one condition was met. **See id.** at 29-30. Grimes posits that he did not violate any of the three conditions in the LSA and, therefore, the trial court erred in granting the confessed judgment. **See id.** at 30-32. Grimes acknowledges that he was in default under the agreements, but posits that the LSA rendered his absolute guarantees null and void unless and until one of three conditions was satisfied. **See id.** at 35-37. We disagree, as Grimes' claim is belied by the record.

The trial court, in its order denying Grimes' petition to open/strike the confession of judgment, made the following findings:

It is undisputed that between 2017 and 2020, Rehab . . . made a series of loans totaling $4,879,152.33 to 14 limited liability companies owned or controlled by Grimes and his former business partner, [] Robert-Ritter . . . with respect to 22 properties. These loans were memorialized in 17 distinct promissory notes signed by . . . Grimes.

It is undisputed that Grimes also signed 17 distinct guarantees [] in connection with the Notes, which expressly state they were to "induce" Rehab "to grant [the] loans or advance."

It is undisputed that the loans **were in default as of July 2021**. It is undisputed that the loans have not been paid back or otherwise satisfied. Grimes does not claim to have made any payments on the loans since their default in 2021.

Rehab confessed judgment based upon the Notes and Guarantees in the amount of $5,664,462.41[,] accounting for interest, fees, and partial payments made on the loan balance. However, Rehab . . . provided proof of additional payments, thereby reducing the amount claimed to $5,494,462.41.

* * *

By contract, Grimes voluntarily consented to have judgment confessed against him in the event of default. It is undisputed that Grimes signed 17 Notes and 17 Guarantees, and that his signature appears at the end of each of the 34 documents. Each of the 17 Notes and 17 Guarantees contain express language authorizing Rehab to confess judgment against Grimes in the event of the default. Counsel for Grimes conceded at oral argument that the words "confess" and "judgment" were conspicuous within the guarantees.

* * *

**It is undisputed that Rehab entered a Loan Security Agreement (LSA)** with OHL [] in March, 2022. It is also

- 14 -

undisputed that the properties securing the Notes were sold on or around May [of] 2022.

However, **neither the LSA itself nor the sale of the properties discharged Grimes' obligations**. Grimes signed **unconditional** Guarantees giving rehab broad authority to extend, modify, release, exchange, compromise, or settle the underlying obligations, and to exchange, release[,] or surrender any security without notice. Grimes thus consented to material modifications of the underlying obligations, [and] release of the principal debtor, as well as impairment of the collateral securing the Notes.

\* \* \*

Further, [**REHAB**] **expressly reserved its rights against Grimes in the LSA**. All conditions precedent to enforcing the Guarantees, including the terms of the LSA, have been met.

Order Denying Petition to Open/Strike, 9/4/24, at 1-3. (citations and quotation marks omitted, emphasis added).

It is clear that Grimes' claim is belied by the record. Indeed, as set forth above, the trial court did not ignore the LSA. Rather, the trial court expressly found that, under the LSA, Rehab had reserved its rights to enforce the Notes and Guarantees against Grimes. *See id.* Further, the trial court concluded that Rehab had met the LSA's conditions required to enforce those Notes and Guarantees. *See id.* The facts bear out that Robert-Ritter defaulted under the LSA, and the trial court found as such. *See id.* Therefore, the LSA did not prohibit the enforcement of the 17 Guarantees, but rather expressly permitted such enforcement. *See id.*; *see also* Amended Confession of Judgment, 4/29/24 (Exhibit C—LSA). Based upon our review of the record, prevailing case law, and the trial court's rationale, we discern no abuse of

- 15 -

discretion or error of law on behalf of the trial court and, thus, Grimes' claim lacks merit and he is entitled to no relief. **See PNC Bank**, **supra**.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/20/2025